# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Gina Bowles and Jason Bowles, | )<br>)<br>) |
| Plaintiffs, | ) Case No: 3:14-cv-23<br>) |
| vs. | )<br>) **ORDER** |
| Robert Sticca, M.D., Sanford and Donald Stallman, M.D. | )<br>)<br>) |
| Defendants. | ) |

Plaintiffs, Gina Bowles and Jason Bowles, brought a medical malpractice action against the defendants, Robert Sticca, M.D., Sanford, and Donald Stallman, M.D., for allegedly removing a portion of the wrong rib in Mrs. Bowles' body.(Doc. #18). Dr. Sticca filed a motion to dismiss plaintiffs' action for lack of jurisdiction asserting he is immune from liability and the court lacks subject matter jurisdiction. (Doc. #20). Sanford and Dr. Stallman filed a motion to dismiss for lack of jurisdiction, joining Dr. Sticca's motion and contending that if the court finds Dr. Sticca is entitled to immunity as a state employee, then plaintiffs' claim against Sanford should also be dismissed to the extent plaintiffs' claim Sanford is vicariously liable for Dr. Sticca's alleged negligence. (Doc. #31). None of the defendants have asserted the action should be dismissed with regard to Dr. Stallman.

## Factual Background

### Medical History

On February 28, 2013, Dr. Sticca performed surgery on Gina Bowles to remove a portion of her left seventh rib. (Doc. #18). Dr. Stallman assisted Dr. Sticca by identifying and marking the affected rib on the skin. (Docs. # 18, 31). Although a portion of Mrs. Bowles' seventh rib was to be removed, a portion of her sixth rib was allegedly removed instead. Id. After the operation Mrs. Bowles continued to experience pain so on April 24, 2013, she had a bone scan

done and requested referral to the Mayo Clinic for a second opinion. (Docs. #21, 21-6, p. 36). Further tests revealed on May 15, 2013, that Mrs. Bowles's sixth rib had undergone a prior resection surgery and that the portion in question in the seventh rib remained. (Doc. #21-9, pgs.1-2). On June 4, 2013, Mrs. Bowles underwent another surgery to remove a portion of her seventh rib. (Docs. #21, 28).

### Dr. Sticca

Dr. Sticca testified that he has been employed by the University of North Dakota School of Medicine and Health Sciences since 2003 and became Chairperson of the Department of Surgery in 2005. (Doc. #21-3, p.1). Dr. Sticca asserts he is a full-time employee of the University of North Dakota ("UND") and receives compensation, including retirement, health insurance, and malpractice insurance, solely from UND. (Docs. #21-1, 21-3, p. 1). Dr. Sticca testified he does not receive any compensation or benefits from Sanford and received no documentation from Sanford reflecting income for the purpose of income tax preparation. (Doc. #21-3, p. 2). Associate Dean for Administration and Finance at UND School of Medicine and Health Sciences, Randy Eken, testified that Dr. Sticca is paid solely by UND and that all of Dr. Sticca's benefits and taxes are accounted and disbursed by UND. (Doc. #21-4, p.1).

As part of his responsibilities as chairperson of the department, UND requires Dr. Sticca to provide surgical and clinical services as well as supervision of residents at an independent health care facility. (Doc. #21). Dr. Sticca performed surgical and clinical services as an independent contractor under the Physician Service Agreement ("Physician's Agreement") negotiated and entered into by UND and MeritCare Medical Group, now Sanford Health. (Docs. #21, 21-5). Dr. Sticca alleges he was required to provide surgical and clinical services to Sanford as a UND employee per the Physician's Agreement. Id. Under the Physician's Agreement, MeritCare would compensate UND, not Dr. Sticca, for services provided by Dr. Sticca. Id. Dr.

2

Sticca and Sanford assert at all relevant times Dr. Sticca was not an employee of Sanford but rather was a UND employee. (Docs. #21, 31).

Mrs. Bowles testified she believed Dr. Sticca was a Sanford employee. (Doc. #28-2, p. 2). Mrs. Bowles asserts she never had a physician-patient relationship with the UND School of Medicine and Health Sciences but rather had only been associated with Sanford Health or its predecessor entities. (Doc. #28-2, p. 1). Mrs. Bowles never received a bill, statement or any other communication from UND and any consent form and other documents related to her surgery were Sanford Health forms. (Doc. #28-2, p. 2). The plaintiffs further point out that the Sanford website identified Dr. Sticca as a Sanford physician, he held administrative positions within Sanford, he had an office provided and paid for by Sanford, and all of his patients are referred to him at Sanford Health. (Docs. #28, 28-1, Sticca's Dep., Doc. #28-3, p. 3-4, 7-8). Plaintiffs contend Dr. Sticca was an agent or employee of Sanford and therefore both Sanford and Dr. Sticca are liable for Dr. Sticca's negligence. (Doc. #28).

**Law and Discussion**

Since jurisdiction in this action is based on diversity of citizenship, the court applies North Dakota substantive law. HealthEast Bethesda Hosp. v. United Commercial Travelers of America, 596 F.3d 986, 987 (8th Cir.2010)(citing Urban Hotel Dev. Co., Inc. v. President Dev. Group, L.C., 535 F.3d 874, 877 (8th Cir.2008)).

**1. State Employee Immunity**

Dr. Sticca asserts that because he is a state employee, plaintiffs' action should be dismissed as a matter of law because they failed to bring their claim against the State of North Dakota and because he is entitled to immunity for alleged negligent acts or omissions occurring within the scope of his employment. (Doc. #21). Under N.D.C.C. § 32-12.2-03(1), "An action for an injury proximately caused by the alleged negligence, wrongful act, or omission of a state

3

employee occurring within the scope of the employee's employment must be brought against the state." N.D.C.C. § 32-12.2-03(1). Under N.D.C.C. § 32-12.2-03(2), "A state employee is not personally liable for money damages for an injury when the injury is proximately caused by the negligence, wrongful act, or omission of the employee acting within the scope of employment." N.D.C.C. § 32-12.2-03(2). The Supreme Court of North Dakota has determined that the University of North Dakota "is an arm of the State of North Dakota." Leadbetter v. Rose, 467 N.W.2d 431, 434 (N.D.1991)(overruled on other grounds by Bulman v. Hulstrand Const. Co., Inc., 521 N.W.2d 632, 634 (N.D.1991).

Dr. Sticca and Sanford assert at all relevant times Dr. Sticca was a UND employee and not an employee of Sanford. (Docs. #21, 31). Dr. Sticca has been employed by UND since 2003. (Doc. #21-3, p.1). Dr. Sticca receives compensation, including retirement benefits, health insurance, and malpractice insurance, solely from UND and has no income documentation for tax purposes from Sanford. (Docs. #21-1, 21-3, p. 1-2). Eken testified that Dr. Sticca is paid solely by UND and that all of Dr. Sticca's benefits and taxes are accounted and disbursed by UND. (Doc. #21-4, p.1). Dr. Sticca acknowledged he performed surgical and clinical services to Sanford as part of his responsibilities as chairperson under the Physician's Agreement, but Sanford was required to compensate UND, not Dr. Sticca, for the services provided by Dr. Sticca. (Docs. #21, 21-5).

The court finds Dr. Sticca was an employee of UND and was working within the scope of that employment when he allegedly negligently removed the wrong portion of Mrs. Bowles' rib. Accordingly, Dr. Sticca is entitled to immunity under N.D.C.C. § 32-12.2-03(2) and the plaintiffs' action against him should be dismissed. Further, the court finds the plaintiffs failed to bring this action against the State of North Dakota as required under N.D.C.C. § 32-12.2-03(1).

The court notes Sanford is a medical service provider that is not "an arm of the State of North Dakota" and therefore does not qualify for immunity under N.D.C.C. § 32-12.2-03.

### 2. Ostensible Agency

The plaintiffs contend an ostensible agency existed between Sanford and Dr. Sticca and therefore one or both parties can be held liable for Dr. Sticca's alleged negligence. (Doc. #28). Dr. Sticca submits allegations of ostensible agency between a state actor and a private entity does not eradicate his statutory immunity under N.D.C.C. § 32-12.2-03. Further, Dr. Sticca asserts that as the agent, he cannot be held liable under the theory of ostensible agency because it establishes liability of the principal only, not the agent. (Doc. #33). Sanford submits that if the court dismisses the action against Dr. Sticca based on immunity then it must also dismiss plaintiffs' claim against Sanford to the extent they claim Sanford is vicariously liable for Dr. Sticca's alleged negligence. (Doc. #31).

Under North Dakota law, "agency is the relationship which results when one person, called the principal, authorizes another, called the agent, to act for the principal in dealing with third persons." N.D.C.C. § 3-01-01; see Lagerquist v. Stergo, 2008 N.D. 138, 752 N.W.2d 168, 172. "An agency relationship is either actual or ostensible. It is actual when the agent really is employed by the principal. It is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be the principal's agent, who really is not employed by the principal." N.D.C.C. § 3-01-03; see Lagerquist, 752 N.W.2d at 172; Alerus Financial, N.S. v. Western State Bank, 2008 N.D. 104, 750 N.W.2d 412, 425. "An apparent or ostensible agency must rest upon conduct or communications of the principal which, reasonably interpreted, causes a third person to believe that the agent has authority to act for and on behalf of the principal." Argabright v. Rodgers, 2003 N.D. 59, 659 N.W.2d 369, 371(citing Krank v. A.O. Smith Harvestore Products, Inc., 456 N.W.2d125, 128 (N.D.1990)). "Agency is never

5

presumed and, if an agency relationship is denied, the party alleging agency must establish it by clear and convincing evidence." Id.(citing Hector v. Metro Ctrs., Inc., 498 N.W.2d 113, 118 (N.D.1993)). "A principal is liable for the tort of an agent committed while acting in the scope of the agency." Hector, 498 N.W.2d at 125(citing Restatement (Second) of Agency § § 215, 219 (1958)). As discussed above, at all relevant times Dr. Sticca was a UND employee, not a Sanford employee, and therefore only analysis regarding the ostensible or apparent agency theory, not actual agency, is applicable.

Mrs. Bowles submits she believed Dr. Sticca was a Sanford employee. (Doc. #28-2, p. 2). Mrs. Bowles asserts she had only been associated with Sanford Health or its predecessor entities and never had a physician-patient relationship with the UND School of Medicine and Health Sciences. (Doc. #28-2, p. 1). Plaintiffs submit they never received a bill, statement or any other communication from UND and any consent form and other documents related to Mrs. Bowles' medical treatment were Sanford Health forms. (Doc. #28-2, p. 2). Further, plaintiffs note Sanford's website identified Dr. Sticca as a Sanford physician, he held administrative positions within Sanford, he had an office provided and paid for by Sanford, and all of his patients are referred to him at Sanford Health. (Docs. #28, 28-1, Sticca's Dep., Doc. #28-3, p. 3-4, 7-8).

There is no indication from the record that Dr. Sticca or Sanford communicated to plaintiffs that Dr. Sticca was not employed by Sanford or was otherwise employed by any other entity, including UND. Based on these facts, the court finds an ostensible agency relationship may have existed between Dr. Sticca and Sanford. Sanford submits it is entitled to dismissal of plaintiffs' action to the extent they allege Sanford is vicariously liable for Dr. Sticca's actions on the ground that when an agent is immune from suit then the principal must also be dismissed from the suit. (Doc. #31). While North Dakota has no case law directly on point regarding vicarious liability through the theory of ostensible agency in the context of the medical field, the

6

doctrine has been applied in such circumstances in other jurisdictions. In Kashishian v. Al-Bitar, the Court of Appeals of Wisconsin held the private hospital was vicariously liable for the negligence of the state employee physician under the doctrine of apparent agency. See Kashishian v. Al-Bitar, 194 Wis.2d 722, 535 N.W.2d 105 (Wis. Ct. App. 1995). Accordingly, the court finds that a genuine issue of material fact remains and summary judgment on this issue would be improper.

### 3. Failure to Timely File Notice

Dr. Sticca asserts the plaintiffs failed to timely file the notice of claim under N.D.C.C. § 32-12.2-04(1) and therefore the court lacks subject matter jurisdiction over the plaintiffs' claim. (Doc. #21). Because the court already found plaintiffs' claims should be dismissed against Dr. Sticca based on his immunity as a state employee, the court does not need to address this argument. Sanford did not request dismissal based on failure to timely file notice. (See Doc. #31).

## Conclusion

The court finds Dr. Sticca is a state employee and therefore entitled to immunity from this action. Additionally, the court finds an ostensible agency relationship may have existed between Dr. Sticca and Sanford, and a reasonable jury could find Sanford vicariously liable as the principal. Accordingly, Dr. Sticca's motion to dismiss (Doc. #20) should be **GRANTED** and Sanford and Dr. Stallman's motion to dismiss (Doc. #31) should be **DENIED**.

**IT IS SO ORDERED.**

Dated this 9th day of January, 2015.

/s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge